DOWD, J.

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | | |
|---|---|---|
| United States of America, | ) | |
| | ) | CASE NO. 4:05CR078 |
| Plaintiff(s), | ) | |
| | ) | |
| v. | ) | MEMORANDUM OPINION AND |
| | ) | ORDER |
| Todd Burke, | ) | (Resolving Doc. No. 14) |
| | ) | |
| Defendant(s). | ) | |
| | ) | |

## I. Introduction

Defendant Todd Burke has been indicted for violating 18 U.S.C. § 922(g)(1), possessing two

firearms, *i.e.*, an SKS assault rifle and a semi-automatic pistol, as a convicted felon.  Currently pending

before the Court is Burke's Motion to Suppress the evidence resulting from a search of his motor

vehicle after his arrest on unrelated charges (Doc. No. 14). The government has opposed this Motion.

(Doc. No. 20.)

The Court conducted a suppression hearing on May 3, 2005.  During the hearing, the Court

heard testimony from the following individuals regarding the events leading up to the challenged search:

Officer Sherry Ewanish, Officer Crites, and Sergeant Riggins of the Warren City Police Department

(WCPD) for the government and Miss Jennifer Price for Burke.  As the Court indicated at the

conclusion of the suppression hearing, the Motion to Suppress is DENIED.

## II. Background

Around 4:00 p.m. on November 23, 2004, City of Warren police officers were dispatched to

(4:05CR078)

the residence located at 1445 Grove Avenue NW.  Officer Ewanish was the first officer to arrive at the

scene, and Officer Crites arrived shortly thereafter.  When she arrived at the scene, Officer Ewanish

noticed that the external screen door had been broken.  She entered a breezeway through the screen

door and found the wooden door closed.  However, the officers could hear shouting through the door,

and the door appeared to have been kicked in.  A female, whom the officers later learned was Miss

Price, partially opened the door and stuck out her head, but a male, Burke, then forcefully grabbed her

from behind, and the door closed.  Both individuals inside the residence were bloody.

The officers eventually forced their way into the residence.  Burke was holding Miss Price, and

she was flailing around in an attempt to escape his grasp.  The officers separated Burke from Miss

Price and attempted to subdue Burke.  Burke, however, continued to struggle with the officers, but

after applying some force they were able to restrain him.  Officer Crites then removed Burke from the

residence and placed Burke in the back of his patrol car.  While Burke was waiting in the patrol car to

be transported to the police station, he requested that the officers retrieve his sweatshirt and the keys to

his vehicle from inside the residence.

Meanwhile, Sergeant Riggins (who had arrived after Burke had been subdued) and Officer

Ewanish were attempting to obtain information from Miss Price regarding the origins of the disturbance.

Miss Price had several cuts on her face and neck and one of her fingers had been bitten.  She indicated

to the officers that the altercation had arisen from an argument regarding her conduct towards other

men.  She stated that the argument began on the telephone, that Burke had driven to the residence and

kicked in the door, and that the brawl ensued.  At some point, Miss Price informed the officers that the

2

(4:05CR078)

vehicle parked in the driveway belonged to Burke.  Officer Crites then re-entered the residence and

found Burke's sweatshirt, which had a set of keys in the pocket.  The parties dispute whether Miss

Price requested that the vehicle be towed from the driveway.  Regardless, the officers took possession

of the keys, and Officer Crites returned the sweatshirt to Burke.

Officer Crites, escorted by Officer Ewanish, transported Burke to the Trumbull County Jail,

and Miss Price was taken to the hospital in an ambulance for treatment of her injuries.  The officers

were uncertain whether Burke would be charged with felonious assault or domestic battery.  They,

however, did know that Burke would not be arraigned until the following morning.

After Burke had left the scene, Sergeant Riggins called for a tow truck.  Warren City

Ordinance 303.08 provides that officers are authorized to have a vehicle towed when the vehicle has

been used in the commission of a felony or when it is left unattended because its operator has been

arrested:

> Police officers are authorized to provide for the removal of a vehicle under the
> following circumstances:
>
> . . .
>
> (5)     When any vehicle has been used in or connected with the commission
>         of a felony.
>
> . . .
>
> (7)     When any vehicle is left unattended due to the removal of an ill, injured,
>         or arrested operator.

Warren City Ordinance 303.081 authorizes the police to tow a vehicle that "has been left on private

(4:05CR078)

residential . . . property for at least four hours without the permission of the person having the right to

possession of the property."  Likewise, Warren City Police Department policy manual authorizes

officers to tow vehicles in similar circumstances:

> The police are authorized to remove and/or impound vehicles under the following
> conditions.
>
> . . .
>
> 12.     When the vehicle has been used in the commission of a felony. (Ordinance
>         303.08)
>
> . . .
>
> 14.     When a vehicle has been left on private residential . . . property for at least four
>         hours without the permission of the person having the right to the possession of
>         the property. (Ordinance 303.081. . . .)
>
> 15.     When any other condition exists that permits a police officer to have a vehicle
>         towed under Warren Codified Ordinances.

While waiting for the tow truck to arrive, Sergeant Riggins began to take an inventory of the

vehicle as required by WCPD policy.  The WCPD policy manual states that "[i]t is the policy of the

Warren Police Department that every time a vehicle is towed as a result of a police action, that a

VEHICLE INVENTORY/TOW REPORT is completed."  It later states that the inventory of a motor

vehicle is "[a]n administrative process" which serves the dual purpose of  "protection for a citizen's

property" and "protection for police personnel against Groundless [sic] claims for lost possessions by

citizens whose vehicles have been impounded or otherwise handled by an employee of the Department

of Police."

4

(4:05CR078)

One of the requirements of the Vehicle Inventory Tow Report officers complete when a vehicle is towed is a determination of the condition of any spare tire in the vehicle. To determine whether Burke's vehicle had a spare tire and the condition of the tire, Sergeant Riggins unlocked and opened the trunk. When he opened the trunk, Sergeant Riggins saw in plain view an SKS assault rifle and recognized the strong smell of marijuana emanating from the trunk.[1] Rather than continue searching the trunk to find the marijuana, Sergeant Riggins closed the trunk and radioed Officer Ewanish to return to the residence with her canine Arras.[2]

Officer Ewanish and Arras are certified in narcotics detection. When Officer Ewanish returned to the residence, the trunk of Burke's vehicle was closed and Sergeant Riggins asked her to conduct an external narcotics search of the vehicle using Arras. Either before or during the dog sniff, however, Sergeant Riggins told Officer Ewanish that the trunk had been opened while she was gone. In the event, Arras alerted on the trunk.

After Arras alerted on the trunk, Sergeant Riggins again opened the trunk and continued his search. In addition to the previously viewed assault rifle, he observed a bulge in the carpeting in the trunk. Sergeant Riggins then lifted up the carpeting and discovered a baggie with marijuana in it and a semi-automatic pistol near the spare tire. The spare tire was also underneath the carpeting, and

---

[1]Officer Riggins indicated that he was familiar with the smell of marijuana from his time spent in the narcotics unit of the police department.

[2]Sergeant Riggins testified that the WCPD will call a canine unit to the scene, if possible, when narcotics are discovered to see if the dog will alert on the location of the narcotics. This is apparently an effort to keep the canine's skills sharp.

(4:05CR078)

Sergeant Riggins would have needed to lift up the carpeting to ascertain the condition of the spare tire.

### III. Fact Findings

As indicated above, the parties dispute whether Miss Price told the officers that Burke did not live at the residence and whether she requested that the vehicle be removed.  Officer Ewanish, whom the Court finds highly credible, discussed with Miss Price what had happened after the officers had restrained Burke.  She testified that Price told her that Burke was Price's ex-boyfriend and that he did not live at the residence.  Officer Ewanish further testified that Price was worried about having Burke's vehicle removed from the driveway because she was worried about him returning to pick up the vehicle.  Sergeant Riggins also testified that Miss Price told the officers that Burke did not live at the residence and requested that the vehicle be removed because of her concerns regarding Burke returning to get the vehicle.  Conversely, Miss Price, whom the Court does not find credible, testified that she never told the officers that she wanted to have the car towed.  Indeed, she testified that she requested that the officers leave the car there with Burke's keys.  Because the Court finds Officer Ewanish highly credible, the Court finds that Miss Price told the officers that Burke did not reside at the residence and requested that the vehicle be towed.

### IV. Law and Analysis

The parties dispute whether this Court should analyze the search as an inventory search or as a search incident to a lawful arrest.[3]  "An inventory search is the search of property lawfully seized and

---

[3]While the firearms and marijuana were found in Burke's vehicle, the government does not argue that the automobile exception applies because the government concedes that the officers did not have probable cause to believe that contraband was in the vehicle prior to opening the trunk.

6

(4:05CR078)

detained, in order to ensure that it is harmless, to secure valuable items (such as might be kept in a

towed car), and to protect against false claims of loss or damage." Whren v. United States, 517 U.S.

806, fn. 1 (1996) (citing South Dakota v. Opperman, 428 U.S. 364,

369 (1976)).  A search incident to arrest, however, is limited to areas under the suspect's immediate

control and the place where he was arrested, Chimel v. California, 395 U.S. 752, 763 (1969);  Preston

v. United States, 376 U.S. 364, 367 (1964); although such a search does include a vehicle of which the

suspect is a "recent occupant," United States v. Herndon, 393 F.3d 665, 668 (6th Cir. 2005).  Burke

contends that the Court should analyze the challenged search as a search incident to a lawful arrest

because the arrest report describes the search as a "[s]earch incident to arrest."  In determining the

classification and permissible scope of a challenged search, however, courts must determine what type

of search was objectively justifiable, not the type of search the officer subjectively intended to

complete.  See United States v. Kimes, 246 F.3d 800, 806 (6th Cir. 2001) (citing Whren v. United

States, 517 U.S. 806, 812 (1996)).  In other words, an otherwise valid search will not be rendered

invalid merely because an officer has misclassified the search in a report.

   Here, Sergeant Riggins had called for a tow truck and had begun to take an inventory of the

vehicle pursuant to a policy that stated it was to protect the citizens property and to protect law

enforcement officers from groundless claims for lost possessions.  Thus, Sergeant Riggins was

objectively justified in conducting an inventory search of the vehicle; that the search was later

characterized as a search incident to arrest is irrelevant.  The Court, therefore, will analyze the

challenged search here as an inventory search.

(4:05CR078)

It is clear that "[a]fter lawfully taking custody of a vehicle, officers may conduct a warrantless inventory search." United States v. Lumpkin, 159 F.3d 983, 987 (6th Cir. 1998). Such a search "may not be conducted for purposes of investigation and must be conducted according to standard police procedures." Id. (citing Florida v. Wells, 495 U.S. 1, 5, (1990)). "Reasonable police regulations relating to inventory procedures administered in good faith satisfy the Fourth Amendment." Colorado v. Bertine, 479 U.S. 367, 374 (1987), quoted in United States v. Richardson, 121 F.3d 1051, 1055 (7th Cir. 1997); see also Lumpkin, 159 F.3d at 987. Furthermore, opening a locked trunk to determine whether a vehicle has a spare tire is within the scope of a reasonable inventory search. See United States v. Duncan, 763 F.2d 220, 223-24 (6th Cir. 1985).

The first issue is whether the officers legally took custody of the vehicle. Warren City ordinances and WCPD policy authorize officers to tow vehicles when they are used in connection with the commission of a felony, when they are left unattended because the operator has been arrested, and whenever they are left on private residential property for more than four hours without permission of the person entitled to possess that property. The Court finds that it was reasonable and lawful for the police to have taken custody of Burke's vehicle under any of these provisions. First, Burke had driven the vehicle to the residence in order to commit what the officer reasonably believed was a felonious assault. Thus, the vehicle was used in connection with the commission of a felony. Second, the vehicle was left unattended because Burke was arrested. Thus, the vehicle was left unattended because the operator had been arrested.

Lastly, the vehicle would have been left on private residential property for more than four hours,

8

(4:05CR078)

and the officers reasonably believed that the vehicle was on the property without the permission of the person entitled to possession of the property.  Burke was taken into custody at some time between 4:00 and 4:30 p.m., and the officers knew that he would not be arraigned until sometime the next morning.  The officers, therefore, reasonably believed that the vehicle would remain at the residence for more than four hours.  Additionally, Miss Price told the officers that Burke did not live at the residence and that she wanted the vehicle removed.  Furthermore, Burke had kicked in the door to the residence.  Thus, the officers reasonably believed that the vehicle was on the property without the permission of the person entitled to possession of the property.  The officers, therefore, were authorized to tow the vehicle.

Burke argues that he actually lived at the residence.  However, all of the information available to the officers, *i.e.*, Miss Price's statement and the fact of the door being kicked in, warranted the officers to reasonably conclude that Burke did not live at the residence.[4]  Thus whether Burke actually lived at the residence is irrelevant.  See United States v. Hudson, — F.3d —, 2005 WL 926967, *12 (6th Cir. 2005) (indicating that a consent to search is valid "if 'the facts available to the officer at the moment . . . [would] warrant a man of reasonable caution in the belief that the consenting party had authority over the premises'" (quoting Illinois v. Rodriguez, 497 U.S. 177, 188 (1990)).  Consequently, the officers were authorized to tow the vehicle.

---

[4]Furthermore, only Miss Price's name was on the lease.  Consequently, had the officers conducted a further investigation regarding who was entitled to possession of the residence, they would have found no additional evidence contradicting their conclusion that Burke was not entitled to possess the property.

9

(4:05CR078)

Because he was authorized to tow the vehicle, Sergeant Riggins called to have Burke's vehicle towed and began conducting an inventory search pursuant to WCPD policy.  The Vehicle Inventory Tow Report requires the officers to determine the condition of any spare tire that might be in the vehicle.  Consequently, opening Burke's trunk to determine whether the vehicle had a spare tire was within the scope of a reasonable inventory search.  Once Burke opened the trunk, the assault rifle was in plain view and he recognized the smell of marijuana emanating from the trunk.  Although Sergeant Riggins then closed the trunk to call the canine unit, he was still required to assess the condition of the spare tire.  When he later re-opened the trunk to continue the inventory search, Sergeant Riggins lifted up the carpet in the trunk to view the spare tire.  Once he lifted the carpet, Sergeant Riggins observed the marijuana and semi-automatic pistol.  Thus, Sergeant Riggins discovered the firearms and marijuana within the scope of a reasonable inventory search, and the seizure of the contraband, therefore, does not violate the Fourth Amendment.

### V. Conclusion

For the foregoing reasons, the Defendant Todd Burke's Motion to Suppress is DENIED.

IT IS SO ORDERED.


   May 10, 2005                                    /s/ David D. Dowd, Jr.
Date                                          David D. Dowd, Jr.
                                              U.S. District Judge

10